One second here. You may proceed. Thank you, Your Honor. So, Gene Reese, USC Immigration Clinic, Pro Bono Counsel for Mr. Mercado Arechiga. Would you move your microphone just a little closer? Thank you. Mr. Arechiga came to the United States in the traffic lane fleeing Mexican police. He was denied asylum and withholding because the board found, affirmed the immigration judge's determination that he had been convicted of a particularly serious crime. His California Penal Code, or California burglary conviction. The determination failed to, it was an incomplete analysis. It failed to consider the facts and circumstances of Mr. Mercado's offense. And therefore, this court should remand on that basis alone. The court, the... Well, besides the testimony that the residence was unoccupied, what do we have? Well, the judge relies on the information as the facts and circumstances. And the information includes all the language from the Penal Code section, except for the name of the victim. And this court has held that the nature of the crime alone can't support a particular serious crime determination. Flores Vega, I think, is the most instructive in this case because similarly, the court found that the particular serious crime determination did not take into account the facts of circumstances. And similarly, the IJ there looked at the charging document, the information, which had the elements of the offense and the victim's name. So here, the government argues that, and the board states that the immigration judge considered the facts and circumstances by looking at the complaint. But the complaint doesn't offer any information about the particular circumstances, except for the victim's name, which in Flores Vega was not enough. But I think the point of the question, or at least my question is, if they said that they considered the facts and circumstances, and it may be that in some cases, and maybe in this case, there just isn't any information about the facts other than we know that the there is, why do they need to say anything more? Because the judge relies on the wrong information to say they considered the facts and circumstances. So in Flores Vega, the respondent was found not credible as to his testimony regarding the commission of the offense. And Flores Vega court still said that the judge didn't rely on the facts and circumstances, just on the elements. So what fact or circumstance should have been considered that wasn't considered here? Well, Mr. Mercado stated that he was 18 at the time he committed the crime, that no one was home. What the agency relied on here was the fact that there was this hypothetical potential confrontation between the inhabitant of the dwelling, which we know was not what the circumstances were here. The IJ said that at the hearing, right? But was that part of the basis of the IJ's decision? That was part of the oral decision, Your Honor, where the IJ says that's what brings it into the ambit of the particularly serious crime. And the board didn't? The board, no, the board supports that. Also, there is this comparison to a New York Penal Code statute that involves more aggravating circumstances, including this kind of intent to do harm, having a weapon. That is not similar at all to the California burglary statute or what was alleged in Mr. Mercado's case. And I think this is also tied to the due process violation, the failure to probe. The judge also considers this a hot prowl burglary. The judge states, no, this means someone was home at the time. And so the judge's understanding of the burglary is wrong. And the judge states that I have considered the facts and circumstances, but the judge does not consider the facts and circumstances. So if we look at the sum total of the record, and it's the elements that are stated in the complaint or the information, and then there's Mr. Mercado's testimony that there was no person at the residence, I guess I would say then that the sum total of the record is that there's no one at the residence because that's the only evidence pointing to that point, his own testimony. I think that the agency here relies on the information as facts and circumstances, and that's incorrect. So the agency is not saying Mr. Mercado failed to give us any more details about this, and therefore we can't make a determination that it's not a particular serious crime. The agency says relying on the facts and circumstances is presenting in the information, which are not the facts and circumstances. Those are the elements we find it's a particular serious crime. Was it incumbent on Mr. Mercado to present some other evidence to support his testimony, or is that trying to prove a negative? How do we view the burdens along those lines? It is his burden to show that he had not been convicted of a particularly serious crime. This is closely connected to the due process argument where he was detained and unrepresented. The judge spends maybe like a page total in the transcript on the crime. The judge says, let me clarify these burglaries. This was what's called a hot prowl burglary. Mr. Mercado says no. The judge says no what? Mr. Mercado says no one was home, and she disagrees. She says I'm reading it right here. It's first degree residential. Then the judge says was this a burglary, or was someone home or not? Yes or no? And that's the extent of the question. It wasn't what happened? Tell me about this conviction. And so this kind of very narrow almost argumentative questioning of Mr. Mercado, who was detained and unrepresented, prevented him from being able to talk more about this facts and circumstances. He slides in. I was 18. Why is that a due process violation? Is it your belief that the immigration judge has to develop the record for Mr. Mercado in order to satisfy due process? I think according to Hussain, the judge has the, especially for a detained, unrepresented client, has the duty to ask broad questions, to develop the record as to potential avenues of relief. So here the judge is not even asking broad questions, and the judge is actually limiting the presentation of evidence that goes directly to asylum and withholding by asking Mr. Mercado yes or no, was someone home, and that's it, and not asking. What about the judge having granted two continuances in order to allow him to prepare more or bring witnesses or even bring witness statements? Doesn't that suggest that the judge was giving him some leeway in order to develop the record further? I think if you look at the transcript and the record, Mr. Mercado, continuances don't solve the problem for Mr. Mercado, who was detained and unrepresented and had one phone call a month, and he brought that to the judge's attention early on, that he wasn't able to reach investigator. Later there was information that he wasn't able to reach attorneys and that detention facility personnel called for him outside of his presence and said, nobody's answering. So I don't know that continuances solve the process issue where he was not having access to be able to call people, witnesses, and the judge kind of says, well, use your girlfriend as a go-between. We know that his girlfriend didn't speak English, that this was during COVID, and then also he didn't have regular phone calls with her. I mean, he wasn't able to. He's only allowed one phone call a month. So I think that the continuances don't satisfy the due process errors. What do we make of the length of the sentence imposed? That would tend to indicate that the sentencing judge thought it was a little more serious than a burglary of an unoccupied building. Well, the length of the sentence was not the minimal sentence, but it was not the highest sentence either. So based on the elements and the fact that he was given a middle sentence and there is evidence that he served half of that sentence, so the midterm at halftime doesn't support that this is a particularly serious crime. It wasn't the maximum sentence. So if the board had added to its decision, like suppose they added the following sentence, you know, we've considered all the facts and circumstances, but don't think that there is anything especially noteworthy or unusual about the facts and circumstances of this offense that, you know, affects our weighing of the factors. If they had said that, would that defeat the argument that you're making? Not on this record, because the record shows that there's this comparison to the New York Penal Code statute. There's this hot prowl mistake that comes with it. But the hot prowl, again, that was not in the written decision, right? It wasn't, but it was part of the IJ's deliberation of the circumstances. But we, I mean, we make all kinds of stray argumentative remarks at argument, and if they're not reflected in the opinion, nobody thinks that that's part of what we're deciding. Don't we? Surely the IJ is allowed to say things, and then, you know. The IJ is allowed. Think better of it when she writes the opinion, right? I agree, and the IJ, it's not clear from the record that the IJ really ever gives up on the hot prowl, but let's say she does, or the IJ does, excuse me. The board decision still, in affirming the IJ, still cites this New York case involving a New York Penal Code section in support of a particular serious crime determination, and that includes circumstances that are not present here that are more aggravating. So I think- So in your view, the citation to the New York case reflected the same type of misunderstanding about the hot prowl that the IJ, that the IJ's stray comment reflected? I, yes, but more, more that it reflects a lack of understanding the facts and circumstances, of attributing different facts and circumstances to this case that were not present. Meaning, that because he was convicted of first degree burglary, that there necessarily had to be a person present when he went into the dwelling? Yes, or there had to be this escalation of harm, or potential for harm, that was not in the record here regarding the facts and circumstances. Well, the California statute doesn't require someone to be home in order to be convicted of first degree burglary, correct? Correct. Because the IJ cited to a matter of frontescue, the board opinion, which, as I understand it, identifies three bases for finding a particularly serious crime. It's either whether the house is occupied, whether there's aggravating factors, or whether the offender is armed, and it seems as if factors two and three weren't engaged in any sort of way. Nothing aggravating and nothing being armed, this solely depends on whether it's particularly serious based on someone being present at home. Right. And no one was present, and that is in the record, that's clear, that no one was present. But I guess my question is, there was no thought that the other two factors might come into play at any point in time. In the frontescue analysis? No, in these proceedings. Correct. Yes, that's correct. It just, I know I have limited time, but I just kind of wanted to fast forward to the waiver of the CAT issue. Mr. Mercado was detained and unrepresented, and he raised his disagreement with the judge's decision, which includes the CAT denial. Because without the, with the particular serious crime determination, if that is upheld, the only relief Mr. Mercado has is Convention Against Torture Protection. He specifically states in his notice of appeal, I agree with the IJ decision. And so his, the board was wrong in deeming him to have waived the CAT grounds. The board was on notice that he disagreed with the board's decision, which included the board's denial of CAT, which was on an adverse credibility basis, which was the board's reasoning. And so this case should be remanded so that the board can consider the CAT denial as well. Thank you, counsel. We'll hear from the attorney general. Good morning, your honors, counsel, and may it please the court. My name is Rob Stalzer. I'm here on behalf of the AG. I'd like to start with the particularly serious crime determination. As you know, that's for abuse of discretion. What was required was for the board and the immigration judge to consider the nature of the conviction, the type of the sentence and the underlying circumstances, as far as they are known. That's what occurred here. The immigration judge and the board both started out examining, is this type of burglary, the type of CPC 457 burglary, the sort of crime that could be within the ambit of a particularly serious crime? That's where they started. And that is, by the way, where both the board and the immigration judge cited the New York case saying, hey, look, some of these are, and therefore, let's look at the individual circumstances of petitioner's case. And that's when they, of course, cite to the felony complaint to which a petitioner pleaded, which recounts that he entered an inhabited dwelling and trailer coach. Right. But under California law, as I just mentioned, it doesn't make any difference whether someone is there or not. An inhabited dwelling is just if it's not a vacant house where the owner has left. So does it make a difference, in your view, in terms of whether this is a particularly serious crime, whether there's somebody actually in the building or not? No, Your Honor, I don't think it does. And why is that? I mean, you're basically saying that the burglary, first degree burglary in California is per se a serious crime, and we haven't gone that far. Well, in this case, we know that this was an inhabited dwelling, which means even though somebody wasn't home, or not necessarily at home at the time of the crime, it could be, but it doesn't have to be, there's still a risk of confrontation. There's a qualitative difference, Your Honor, between, for example, a burglary of a residence that's occupied, even if nobody's home, and, for example, a commercial establishment. And that's what it would make, that's what brings this case into the realm of a particularly serious crime, rather than just a per se argument. Because you're saying the possibility of somebody being in the home is enough, but that's what the statute says. And we never said that the statute alone constitutes a particularly serious crime, per se. Right, that's the first step. And then it's to look at the underlying circumstances, which include here the four-year sentence, which was greater than the minimum, and gave the immigration judge reason to believe this was more serious than just the bare minimum entry into an inhabited dwelling. So what do you make of Flores Vega? I mean, that's the best case they have, and it's pretty similar here. In fact, this case is slightly stronger because there was no adverse credibility determination made as to his testimony that the building was unoccupied. So how do you distinguish that? Because I think in Flores Vega, the analysis, or the charging document, was too cursory. As Petitioner has argued, it tracked the language of the statute too close to be considered a case-by-case analysis. That's what's required here, is that the immigration judge and the board consider whether this particular crime was particularly serious, not whether it's just crimes under these statutes in general are. But here, like I said, we've got some individual details, which are recounted in the felony complaint, and we've also got the larger-than-the-minimum sentence that the immigration judge considered. Well, let's talk about the individual details, because it's the complaint, the name of the And this is my question to opposing counsel. It seems like the sum total of the record is, on the question of whether there was someone there or not, is Mr. Mercado's testimony that there was not. So how is this case distinguishable from Flores Vega, where we found there that you cannot just rely on the elements of the statute itself? Right. Those details, and I also forgot to mention that Petitioner was convicted on the same day for the second crime, the carjacking crime, the same day, which gave the immigration judge the impression that there was some dangerousness to Petitioner's actions on that day when he was convicted. In Flores Vega, hadn't the board said that it thought the elements of that offense were enough to make it particularly serious? But by adopting the IJs, I mean, the IJ had said that, and the board adopted that, right? In Flores Vega? In Flores Vega. Yeah, I don't recall the details. Well, did the board say that here? The board, no, I mean, the board here preferred to do an analysis of the underlying circumstances, not merely adopt the language of the indictment. I also just want to mention before I move on from the particularly serious crime to the other issues, the board and the immigration judge did not rely on the immigration judge's hot-prowled burglary comment. That was something the board had said while they were taking testimony, and the Petitioner corrected the immigration judge, and then she abandoned that line of questioning, and it doesn't come up again in her decision, and it doesn't come up in the board's decision. So the hot-prowled comment just wasn't part of the analysis. My construction of that, and I may be wrong, was that the IJ was interpreting the statute. It basically is a hot-prowled statute, as opposed to the individual circumstances, but I may be wrong on that. It's hard to say, hard to know from the... I think from her ultimate decision, she was corrected on that, or persuaded, because she does talk about in her decision how, under California law, the building doesn't necessarily have to have somebody there at the time that the crime is committed. So it seems like she knew by the time the decision was created that this wasn't a hot-prowled situation, either in the circumstances or because of the statute itself. If I may, Your Honors, moving to the torture claim, just next... As you know, the board held that the torture claim was forfeited because Petitioner didn't mention it in his Notice of Appeal. Even for pro se appellants like Petitioner, they have to raise, at least put the board on notice that they're challenging a particular issue. They don't have to make a legal argument. It doesn't have to be artfully stated, but they do have to let the board know that they disagree with a certain aspect of the immigration judge's decision. And in his Notice of Appeal, he doesn't do that. He makes some very specific arguments regarding due process. He challenges the particular serious crime determinations. He talks about his private investigator, but he never says the immigration judge got it wrong on torture, or he never says the immigration got it wrong on adverse credibility. Those things, that would have been enough to just put the board on notice that it needs to address that claim, but he didn't. Instead, he made several other pretty particular claims. And right in the middle of those other claims, he says, I disagree with the immigration judge decision. That's not enough, Your Honors, by itself without some other indication of what he's actually challenging, particularly here where he made specific challenges. And that's why it was appropriate and no abuse of discretion for the board to decline to torture claim on appeal. And then finally, regarding due process, Petitioner largely failed to exhaust most of the due process claims he makes in his opening brief. He didn't argue to the board that the immigration judge failed to develop the record. He didn't argue that the immigration erred by imposing him on an unfair evidentiary standard. So those arguments are unexhausted, and the court therefore lacks jurisdiction over them. But even if the court were to reach these arguments, it's clear he had a full and fair opportunity to pursue his claim. He was pro se, but the immigration judge gave him multiple continuances to develop evidence. During the course of his testimony, the immigration judge asked multiple probing questions, trying to get to all of the particulars of his case. And she also allowed the testimony of his girlfriend, Ms. Fuentes, again, trying to get to the particulars of his case. At the very conclusion of proceedings, she tries three times. She says, is there any other evidence you want to give me? And he starts to talk about his closing argument. Immigration says, no, wait, no, wait. I want to make sure I've got all the evidence. He says, yes, you've got it. She asked, do you want to bring anything else? He says, no. He didn't ask for another continuance to get his investigator. He didn't ask for another continuance to develop the evidence. He simply, you know, even though she asked him three times, are you good to go? And then she allowed him to make an eloquent closing argument and considered it before rendering her decision. There's nothing here, Your Honors, that indicates a lack of due process. Let's assume hypothetically that the IJ had asked him specifically about the crime. And he had testified. Again, hypothetically, that's not what happened here. But he said, I checked out. I went around the house. I made sure no one was home. And then I went in. Would that make a difference to you in terms of the particularly serious crime analysis or not? I think it would, hypothetically, insofar as each of these cases has to be considered on its own merits, right? It's a case-by-case determination. And if there's some reason, especially if there's some reason to believe that the applicant isn't giving merely self-serving testimony, if there's some reason. Maybe it's not the applicant, hypothetically. Maybe it's somebody else. You know, the police report says that the applicant took great care to make sure that nobody was there. Well, then obviously that should be considered. That's an underlying circumstance. And in the Frantescu matter of NAM analysis, the immigration judge is required to consider the circumstances. But here we don't have anything like that. As you said, it was a hypothetical. The reason I raise the hypothetical is that it bears on his due process argument a bit in terms of whether the IJ, in dealing with a pro se applicant, fully developed the record. Well, again, she did ask him about it. I don't know. Again, there's a point where she crosses over into advocacy. And to the extent that she's trying to find, to discern whether a particularly serious crime has occurred, I think she met her, met due process in talking to the petitioner in this case. Go ahead. I interrupted you. I didn't mean to interrupt your train of thought. I was going to say, certainly, and especially looking at, for example, the way the immigration judge tried to handle the other witness evidence, saying, giving multiple continuances. At one point, instructing the petitioner on two different occasions, look, if for some reason you can't bring these evidence, can't bring these people to testify, she would take the evidence in a written form. She was willing to do that. And petitioner was eventually able to get Mrs. Fuentes into the courtroom anyways. So that wasn't an issue for her. It was an issue for the private investigator. But on that point, the immigration judge said, let's do it telephonically. And she tried on four occasions to call the investigator and just got voicemail every time. My point, Your Honor, is these are not the actions that suggest a lack of fundamental fairness or immigration judge bias. It looks like the immigration judge did the best she could to develop as much of this record as possible. So even if petitioner had exhausted the develop the record question before the board, there's just no due process violation apparent on the face of this. But I suppose to go back to Judge Thomas's hypothetical, had she engaged in more inquiry as to the specifics of that crime and deal with the real world of what may have happened, couldn't that have formed the basis to be able to make a determination one way or the other about whether this was a particularly serious crime or not? I tend not to think so here, Your Honor. And I'll tell you why. And that's because the immigration judge ultimately makes an adverse credibility determination. And that's not on appeal here because petitioner waved it before the board. But the fact is, you know, the immigration judge apparently disbelieved what the petitioner was telling her. So even if, you know, he had said more, even if hypothetically that she had asked him more questions trying to get it looks like or at least as far as the record stands, she wouldn't have believed him anyways. And so that wouldn't form the basis of. Well, then what would? I guess this is a little gray area. So let's say she disbelieves him and she. So then what forms the basis for the finding of a particularly serious crime otherwise? The things we have on the record here, the elements, the sentence and the felony complaints sentence. OK. Yes, Your Honor. If there are no other questions, Your Honor, thank you very much for your time. Thank you, counsel. We'll hear rebuttal. Regarding the particular serious crime analysis, the judge considering the sentence doesn't cure the judge's failure to consider the facts and circumstances. Two out of three, the elements and the sentence don't get us to a proper analysis. The board's decision says that the immigration judge found the underlying facts were consistent with a particular serious crime, noting that the complaint alleges respondent entered an inhabited dwelling, an inhabited portion of a building occupied by an individual with intent to commit larceny or any felony. That description is not the underlying facts. That's the description of the elements of burglary, and you cannot differentiate that from any other burglary committed in California. And so that is insufficient. Regarding due process, the judge also limited presentation of testimony when she advised Mr. Mercado that hearsay was not admissible in immigration court, which is incorrect. And when Mr. Mercado was questioning his witness, Ms. Flores, the judge stopped him at one point and said, on the basis of this belief that he can't elicit hearsay, and Mr. Mercado stopped asking questions. To prove prejudice, you only need to show it could have affected the outcome, not that it certainly affected the outcome. Here, the judge gave misinformation regarding the availability of evidence and prevented the presentation that could have affected the outcome. Thank you. Thank you, counsel. Thank you both for your arguments this morning. And the case just argued to be submitted for decision.
judges: THOMAS, MILLER, SANCHEZ